STEPHENSON and others (executors and trustees) and STEPH-ENSON and another (personally), Respondents, vs. NOR-RIS (an infant), Appellant, and PARKER and others, Respondents.

SAME, Respondents, vs. DICKSON and another (infants), Appellants, and PARKER and others, Respondents.

SAME, Respondents, vs. PRATT and others (infants), Appellants.

*February 27—May 8, 1906.*

*Wills: Action for construction: Jurisdiction: Circuit and county courts: Powers of trustees: Discretion as to apportionment of estate: Unpaid notes of beneficiaries held by testator: Discharge in bankruptcy: Interest: Allowances to guardians* ad litem.

1. Executors and testamentary trustees, when they have real and serious doubts as to their duty, may, for their own protection, maintain an action in the circuit court for construction of the will, although no actual litigation or contest in respect thereto is pending.

2. The mere fact that the questions involved would eventually arise for consideration in the county court, or that that court, under ch. 163, Laws of 1905, has power to construe a will in a proceeding brought solely for that purpose, does not make it improper for the circuit court to entertain such an action.

3. In each of several items a will provided that certain of the shares into which the estate was to be divided be held in trust by the executors during the term of two lives and nineteen years thereafter for the benefit of a certain person and his or her descendants, and directed or authorized the trustees, upon the termination of the trust or, in certain contingencies, before that time, to pay and transfer both the principal and income of said shares to the descendants, "giving to each of said descendants such portion thereof as my said trustees shall deem best." *Held*, that under the powers so granted the executors and trustees were permitted, in the exercise of a sound legal discretion, not arbitrarily nor through whim or caprice, to apportion the sums so given among the beneficiaries equally or unequally, or to give the whole to one or more, to the entire exclusion of the others. MARSHALL, J., dissents.

4. A subsequent item in the will—giving to the trustees discretion, as to all the provisions of the will, to withhold or diminish the share of any beneficiary who in their opinion should be unworthy or should not be of sufficient capacity properly to use and care for it—did not change or limit the general discretion as to apportionment given by the prior items, especially where such subsequent item itself, as well as other portions of the will, referred to and recognized that general discretion as another and different discretion from the discretion to withhold because of incapacity or unworthiness. MARSHALL, J., dissents.

5. The will directed that all notes and obligations of any beneficiary or his descendants held by the testator at his death, including obligations barred by the statute of limitations, be appraised at the full amount of principal and interest unpaid and owing at the time of the death, and requested the trustees, in making division of the estate into parts, to assign said obligations to the parts to be held in trust for such beneficiary, it being expressly declared to be the testator's intention that no relative or his descendants benefited by the will should obtain an advantage over any other by reason of any advancement or assistance rendered to him or his descendants by the testator and evidenced by any such unpaid note or obligation held by the testator at the time of his death. *Held* that, notwithstanding a discharge in bankruptcy of a descendant of one of the beneficiaries named in the will, prior to the death of the testator, his notes given before such discharge and held by the testator at the time of his death must be considered unpaid obligations, to be assigned to and charged up against the share to be held in trust for such beneficiary and his descendants.

6. Under the terms of the will, in assigning such obligations to the
share of the estate to be held in trust for said beneficiary and
his descendants, they should be appraised at the full amount of
the principal and interest unpaid thereon at the time of the
testator's death; and the trustees were authorized, in their dis-
cretion, to withhold from the maker of the notes and his de-
scendants so much of the income and principal otherwise pass-
ing to them, from time to time, as would equal the full amount
of principal and interest unpaid from time to time upon said
notes, and to distribute the amount so withheld among the other
descendants of said beneficiary named in the will.

7. In an action brought by executors to obtain a construction of the
will, allowances to the guardian *ad litem* of an infant brought
in as defendant should not be made payable out of the body of
the estate, but should be made payable only out of the infant's
property under the control of the court, giving a lien thereon if
necessary.

APPEALS from a judgment of the circuit court for Mil-
waukee county: WARREN D. TARRANT, Circuit Judge. *Mod-
ified and affirmed.*

This is an action brought in the circuit court to construe
the will of Daniel Wells, Jr., who died March 18, 1902. The
action is brought by the executors and trustees named in the
will against all the legatees, many of whom are minors. The
estate bequeathed was very large, and the original will, exe-
cuted February 20, 1897, was long and complicated, and was
subsequently modified by three separate codicils. The com-
plaint sets forth the death of the testator and the subsequent
probate of the will and codicils in the county court of Mil-
waukee county, the names of all the heirs and legatees, the
provisions of the will and codicils, also certain facts as to the
indebtedness of certain beneficiaries to the estate of the tes-
tator, and alleges that they are advised that very serious
doubts exist as to the meaning of certain provisions of the
will, and that it is necessary for the protection of the legatees
and devisees, as well as for the aid of trustees, that they
should have the advice of the court in the premises, and they
pray that the court construe the will and adjudge the mean-

ing thereof in certain particulars which were put in the form of twenty-two questions in the prayer of the complaint. Guardians *ad litem* were thereafter duly appointed for the infant defendants, and these guardians made answer to the complaint submitting the rights of their wards to the court, and, after judgment construing the will and the codicils, three of said guardians appealed to this court.

By the first four items of the will the testator revoked former wills, directed payment of his debts, and made five specific bequests which are not here in question. By the fifth item he gave to his daughter, Fanny Wells Norris, certain specific personal property. By the sixth item he devised all the rest and remainder of his estate to *Isaac Stephenson, Horace A. J. Upham,* and Charles D. Nash, their survivors and successors in trust, to hold the same during the term of the life of his daughter, Fanny Wells Norris, and her son, *Daniel Wells Norris,* and nineteen years thereafter (except that the property named in the seventh item of the will was only to be held during the lifetime of the daughter), in trust for the following purposes and with the following powers: Said executors and trustees were directed to divide the entire estate into eighty-one shares not later than five years after the decease of the testator, said shares to be numbered from one to eighty-one, inclusive, seventy-nine of the shares being equal in amount, and the other two shares being equal to each other but only one half as large as one of the seventy-nine shares. His trustees were also authorized to convert all his real estate into money, and his personal property into real estate, at their discretion, and to organize one or more corporations as they might deem best, and convey to such corporation or corporations such property as they might deem best, and distribute the capital stock thereof among the shares aforesaid as they should deem best. By the seventh item of the will, as modified by the second codicil, the trustees were directed to hold twelve shares of said estate in trust during the life of

his daughter, Fanny Wells Norris, for the benefit of his friends, *Isaac Stephenson* and *Horace A. J. Upham,* and any person or persons whom they or their survivor might designate in writing. By the eighth item of the will the trustees were directed to hold twenty-four and one-half shares in trust during the life of his daughter, Fanny Wells Norris, and her son, *Daniel Wells Norris,* and nineteen years thereafter, for the benefit of said daughter and her lawful descendants, and to pay quarterly the net annual income thereon to said daughter, and upon her death to her lawful descendants, giving to each of said descendants such portion thereof as such trustees shall deem best, and on the termination of the trust to pay whatever remains thereof to the then lawful descendants of his said daughter, giving to each such portion thereof as the said trustees shall deem best. Provision is also made in said item for the disposition among other relatives of the deceased of the said twenty-four and one-half shares in case of the deaths of said Fanny Wells Norris and all her lawful descendants prior to the termination of the trust. By the ninth item of the will twenty-four and one-half shares of the trust estate are to be held in trust as directed for the benefit of *Daniel Wells Norris,* with specific directions as to the use of the income and the division of the principal at the termination of the trust. By the tenth item of the will four shares of the estate were directed to be held in trust for the benefit of Sarah H. Wells, widow of a deceased brother of the testator, and of her lawful descendants. By the eleventh item of the will four of said shares are directed to be held in trust for the benefit of the testator's sister Hannah A. Pratt and her lawful descendants. By the twelfth item of the will four shares are directed to be held in trust for the benefit of the testator's sister Susan J. Brown and her lawful descendants. By the thirteenth item three shares are directed to be held in trust for the benefit of the testator's niece Marcia E. Dickson and her lawful descendants. By the fourteenth item four shares are directed

to be held in trust for the benefit of the lawful descendants of the testator's deceased sister Sarah J. Parker. In all the foregoing items it is specifically provided, in case of payments to be made to the descendants of any beneficiary, that the income as well as the principal is to be divided among such descendants "in such portions to each as my said trustees shall deem best."

The fifteenth item of the will, as amended by one of the codicils, reads as follows:

"In case any person or persons otherwise entitled to any portion of my estate, under any provision of this will, shall, in the opinion of my said trustees or executors, or the survivors or survivor of them or their respective successors in trust, not be either of good habits or of sufficient capacity to properly use or to take care of the portion of such property so coming to him or her, or shall not be likely, for any reason whatever, in the opinion of my said trustees or executors, or the survivors or survivor of them or their respective successors in trust, to properly make use of the portion of such property so coming to him or her, then I empower my said trustees and executors, the survivors and survivor of them and their respective successors in trust, to withhold from every such person, whomsoever he or she may be, his or her portion of my estate and of the income and benefits thereof, as unworthy to receive the same, and to pay to every such person only so much of the portion of my estate otherwise coming to such person as my said trustees or executors, the survivors or survivor of them or their respective successors in trust, having charge of that portion of my estate, shall deem advisable, and in case my said trustees or executors, or the survivors or survivor of them or their respective successors in trust, shall deem it best, instead of paying and transferring to any such person any portion of my estate, themselves to expend the same or any portion thereof for his or her benefit or support, then I hereby authorize my said trustees and executors, the survivors and survivor of them and their respective successors in trust, so to do, subject, always, to the provision that nothing herein contained shall, in any way, extend the duration of the several terms of trust beyond the time provided for in item sixth

of this will. Whatever of my estate, including principal, income, or other beneficial use thereof, shall be withheld from any one, by reason of his or her not being of such good habits or of sufficient capacity or for any other reason, as above provided, not worthy, in the opinion of said trustees or executors, the survivors or survivor of them or their respective successors in trust, to receive his or her portion of my estate, and shall not have been expended by my said trustees or executors, the survivors or survivor of them or their respective successors in trust, for the benefit and comfortable support of such person, shall be transferred to the person or persons who would have taken such property so withheld, in case the person from whom it shall be withheld, as above provided, had been dead at the time of such withholding. In case any person or persons from whom any portion of my estate shall have been withheld by my said trustees or executors, the survivors or survivor of them or their respective successors in trust, as aforesaid, shall have changed and shall have become worthy, in the opinion of my said trustees or executors, or the survivors or survivor of them or their respective successors in trust, to receive his or her portion of my estate, then I direct that the fact that my said trustees or executors, the survivors or survivor of them or their respective successors in trust, may have, at any time, withheld from such person a portion of my estate, shall not thereafter prevent such person from receiving his or her share of my estate, in any distribution either of principal or income that shall thereafter be made by my said trustees or executors, the survivors or survivor of them or their respective successors in trust; but the fact that any such person shall have become worthy to receive a portion of my estate, after having been deemed unworthy to receive the same as aforesaid, shall not entitle such person to receive any portion of my estate that shall have been once withheld from him or her in any previous distribution by my said trustees or executors, or the survivors or survivor of them or their respective successors in trust.

"In order that there may be no difficulty in construing this will, I hereby expressly direct that the foregoing provisions of this fifteenth item are to govern in all cases, and that all other provisions of this will, including all of items numbered from eight (8) to fourteen (14), both inclusive, and all pre-

vious and all subsequent parts of this will, are expressly sub-
ject to such changes and modifications as my said trustees and
executors or either of them, or the survivors or survivor of
them or their respective successors in trust, are authorized to
make by this fifteenth item, on account of any person not
being of good habits, or of sufficient capacity, or for any other
reason not worthy, in the opinion of my said trustees or exec-
utors, or the survivors or survivor of them or their respective
successors in trust, to receive his or her portion of my estate.

"Except as hereinbefore provided in case of any one not
being of good habits or of sufficient capacity, or for any other
reason unworthy, in the opinion of my said trustees or execu-
tors, or the survivors or survivor of them or their respective
successors in trust, to receive his or her portion of my estate,
and except as to the bequests to the issue of my said daughter,
Fanny Wells Norris, as provided in the ninth item of this
will, I desire my trustees and executors, the survivors or sur-
vivor of them and their respective successors in trust, in exer-
cising the discretion given to them by this will in paying and
transferring to the descendants of any person mentioned or
referred to, directly or indirectly, in this will any portion of
my estate, to make such payments and transfers to the parent
to the exclusion of his issue; that is to say, the parent, during
his lifetime, shall be preferred to his issue. I do not intend
this as mandatory, but merely as expressing a wish that may
aid my trustees and executors, the survivors and survivor of
them and their successors in trust, to carry out the discretion
given to them, and that no child shall be entitled to a portion
of or interest in my estate during the lifetime of its ancestor,
unless my said trustees and executors, the survivors or sur-
vivor of them or their successors in trust, shall deem it best
to prefer, in any particular case, the child to the exclusion of
its living ancestor, in which case I authorize and empower
them so to do.

"In case of the death of any one who would, if living, have
been entitled to any portion of my estate, or any interest
therein, under any provision of this will, prior to the time of
such one last mentioned coming into the enjoyment thereof,
it is my will, unless herein otherwise provided, that the lawful
descendants of every such person shall take and have by right
of representation the portion of and interest in my estate that

such deceased person would have taken and had, if living, subject, always, nevertheless, to such changes and modifications as my said trustees and executors, the survivors and survivor of them and their respective successors in trust, are authorized to make under any provision of this will.

"It is my will that the judgment and opinion of my said trustees or executors, the survivors or survivor of them or their respective successors in trust, respectively, as to the good habits and sufficient capacity or worthiness, as aforesaid, of any one entitled to any portion of my estate, shall be final and conclusive.

"In case of the death of any one for whom provision is made herein and of all of his lawful descendants, prior to the time of his or their entering upon the enjoyment of the portion of my estate that he and they would have received and enjoyed if living, and there is contained in this will no provision herein expressed providing who shall take such portion of my estate last mentioned in case of the happening of such contingency, then I give, devise, and bequeath that portion of my estate last mentioned to the heirs of my father, to have and to hold the same to them, their heirs and assigns forever, giving to each heir of my father such portion thereof as my said executors and trustees, the survivors and survivor of them and their respective successors in trust, shall deem best. My executors and trustees, the survivors and survivor of them and their respective successors in trust, are respectively authorized to make advances, from time to time, as soon after my decease as they may deem best and prior to the actual division of my estate into eighty-one (81) shares or parts as herein provided, to any person entitled to any portion thereof of such sum or portions as my said executors or trustees, the survivors or survivor of them or their respective successors in trust, shall deem advisable, to be received upon account of such person's interest in my estate.

"Prior to the actual division of my estate into eighty-one (81) shares or parts, as herein provided, I authorize my said trustees and executors, the survivors and survivor of them and their respective successive successors in trust, to pay quarterly the net annual income of my estate to such persons and in such portions to each, as said persons, respectively, would be entitled to receive had such division into eighty-one (81)

parts been made immediately after my death. If, for any reason, my said executors or trustees, the survivors or survivor of them or their respective successors in trust, are unable in any case, either prior or subsequent to the said division into eighty-one (81) shares or parts, to ascertain the exact amount to be paid at a particular time to any person on account of his portion of the net annual income of my estate or of any portion thereof, then said executors or trustees, the survivors or survivor of them or their respective successors in trust, may make such partial payment on account thereof as they deem advisable, and make the remaining payment as soon as they shall have ascertained what the exact amount of the same shall be.

"After the division of my estate into eighty-one (81) shares or parts shall have been made and the numbers of said shares or parts shall have been assigned to them, respectively, as hereinabove provided, no subsequent change in values of any portion thereof shall affect or alter any such division, in any way."

The twenty-sixth item of the will reads as follows:

"I direct that all notes, bonds, contracts, agreements, and obligations held by me at the time of my death upon which any person shall be indebted or liable to me who shall be beneficially interested in any provision of my will, or upon which the husband or wife or any of the issue of such person so beneficially interested in any provision of this will shall be indebted or liable to me, if not collected by my executors or trustees before the division of my estate into eighty-one (81) shares or parts, as heretofore provided in this will, shall, for the purpose of the division of my estate into said eighty-one (81) shares or parts, be appraised at the full amount of principal and accrued interest unpaid and owing to me thereon at the time of my death, including any and all such notes, bonds, contracts, agreements, and obligations that are barred by the statute of limitations, as well as those that are not so barred; and all such notes, bonds, contracts, agreements, and obligations, I request my said trustees, in making the division of my estate into eighty-one (81) shares or parts, as hereinbefore provided, to assign to the specific shares or parts respectively, of my estate, in which such person shall be beneficially interested under the provisions of this will. It is

my will, in case the shares or parts of my estate in which any
such person shall be beneficially interested under my will
shall be less than the amount of such indebtedness or liability
to me which shall be properly assignable to such shares or
parts, that the excess of such indebtedness or liability to me
shall constitute a portion of my estate and shall be so dis-
tributed among all the other remaining shares or parts of my
estate as my said trustees, in making the division thereof into
eighty-one (81) shares or parts as hereinbefore directed, shall
deem best; it being my intention hereby to provide more fully
for the equitable division of my estate into eighty-one (81)
shares or parts, so that no one of my said relatives or the hus-
band or wife or issue of any such relative who shall be bene-
fited by my said will shall obtain an advantage over any other
person by reason of any advancement or assistance I may
have, before my death, rendered to such relative or the hus-
band or wife or any issue of the same, and which advance-
ment or assistance shall be evidenced by any such unpaid note,
bond, contract, agreement, or obligation unpaid and held by
me at the time of my death."

It is unnecessary to state, even in substance, the remaining
items of the will, as they have no bearing on the present con-
troversy.   Nor is it necessary to state the provisions of the
three codicils.

The court made findings specifically answering each of the
twenty-two questions propounded by the complaint, and fur-
ther found that the services of the various guardians *ad litem*
were necessarily performed for the general benefit of the en-
tire estate; that the reasonable value of the services to each of
said guardians was the sum of $800, and that said sum should
be allowed and paid out of the trust estate at large.   The
court further directed that the allowance to be made to the
executors and trustees for the services of their counsel be fixed
by the county court, to be paid out of the trust estate.   As the
findings excepted to are specially set forth in the opinion it
will be unnecessary to recite them at length here.   Judgment
construing the will was entered in accordance with the find-
ings of the court.

*Glenway Maxon,* guardian *ad litem,* for the appellant. *Daniel Wells Norris.*

*Charles D. Mann,* guardian *ad litem,* for the appellants *Andrew C. Dickson* and *Jessie Dickson.*

For the appellants *Ralph S. Pratt* and others (respondents on other appeals) there was a brief by *Frank B. Van Valkenburgh,* guardian *ad litem,* and *Charles A. Vilas,* of counsel, and oral argument by *Mr. Van Valkenburgh.*

*Alfred L. Cary* and *William E. Black,* for the plaintiffs and respondents.

*John F. Harper,* guardian *ad litem,* for the infant defendants *Sumner W. Parker* and others.

For the infant respondents *Gilbert Wells, Percy W. Cushing,* and *Mary W. Cushing* there was a brief by their guardian *ad litem, W. D. Van Dyke.*

For the infant respondents *Marcia Dickson Jones* and others there was a brief by *F. H. Bottum,* their guardian *ad litem,* and *Ryan, Ogden & Bottum,* of counsel, and oral argument by *L. M. Ogden.*

For the infant respondents *Kenneth Fisher Bingham* and others there was a brief by their guardian *ad litem, Cornelius I. Haring.*

The following opinion was filed March 20, 1906:

WINSLOW, J. The guardian *ad litem* of *Daniel Wells Norris* assigned three errors, viz.: (1) That the complaint does not state a cause of action; (2) that the circuit court should not have assumed jurisdiction, inasmuch as the settlement of the estate was proceeding in the county court; and (3) that compensation for the various guardians *ad litem* should not have been ordered to be paid out of the body of the estate. The first two of these contentions will now be considered, and the third will be taken up at the close of this opinion.

The plenary jurisdiction which the circuit court possesses, as the legitimate successor of the ancient court of chancery,

over actions for the construction of wills, especially where trust powers are involved, is so well established that it is not open to doubt or discussion. *Heiss v. Murphey,* 40 Wis. 276; *S. C.* 43 Wis. 45; *Miller v. Drane,* 100 Wis. 1, 3, 75 N. W. 413. Nor in such cases is it necessary that there should be an actual litigation begun or contest pending to justify the court in entertaining the action. A trustee is entitled to the protection of the court in the execution of his trusts, and, when real and serious doubts confront him as to his duty, is entitled to the advice of the court to guide him. This court has said that in such a case "it is not the mere right, it is almost the duty, of the executor to take the opinion of the court upon the construction of the will and the validity of the disposition which it purports to make of the testator's property." *Heiss v. Murphey,* 43 Wis. 45. See, also, 28 Am. & Eng. Ency. of Law (2d ed.) 1050, 1051, and cases cited in note 8.

The complaint and will before us amply demonstrate that doubts might well be entertained as to the construction of a number of clauses of this long and involved will, and completely justify the course of the executors and trustees in asking for judicial guidance in the performance of their onerous and delicate duties.

Nor can it be said that this is one of the cases where the circuit court should refuse to entertain the action because the questions involved will eventually arise for consideration in the county court. This court has said that nothing short of an express statute will make the jurisdiction of the county court exclusive in such cases. *Miller v. Drane, supra; Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304. Ch. 163, Laws of 1905, passed after the present suit had been begun, gave formal and express recognition to the power of the county court to construe wills in a proceeding brought solely for that purpose; but it did not purport to abridge the already existing power of the circuit court to do that same thing. We

have no difficulty, therefore, in holding that the present action was well brought in the circuit court.

Passing to the questions of construction raised by the appeals, we find the most serious and comprehensive question to be that involving the extent of the discretion given to the executors and trustees under items 8 to 14 of the will. As will be seen by reference to these items, they are practically synonymous in their terms, so far as this question is involved. They all give certain shares of the estate in trust to the executors, directing them upon the happening of a certain event, such as the death of a certain beneficiary, or upon the termination of the period of trust, to pay to the lawful descendants of a specified beneficiary a certain portion of the estate, "giving to each of said descendants such portion thereof as my said trustees shall deem best." The respondents contend, and the court held in effect, that under the powers granted by these items the executors and trustees were permitted, in the exercise of a sound discretion, but without wilfulness or favor, or caprice or arbitrary action, to apportion the sums so given among the beneficiaries either in equal portions or in unequal portions, or by giving the whole to one or more to the entire exclusion of the other or others. Certain of the appellants contend, however, that from a consideration of the whole will it is evident that the testator contemplated that each beneficiary of a class, under items 8 to 14, should receive an equal portion, unless it should be withheld by the trustees by reason of lack of good habits, unworthiness, or incapacity under item 15 of the will. This contention certainly calls for careful examination of the whole will and a comprehension of the testator's entire scheme. There can be little or no doubt as to the general character of that scheme. The testator was a man of great wealth. He evidently viewed his estate as a great business enterprise, an entity which he desired should be kept substantially intact for many years after his death. He there-

fore placed it in the hands of trusted persons with the most
full and carefully specified powers, for the benefit, ultimately,
of his father's descendants. His desire that it should remain
an entity, presumably as a great corporation, with the bene-
ficiaries as stockholders, is very apparent. The duration of
the trusteeship as contemplated might be well towards a cen-
tury. Many of the ultimate beneficiaries were yet to be born,
and of their character or abilities he could know nothing, and
so, in order to conserve the property, save it from dissipation
by unknown beneficiaries, and insure its enjoyment by the
members of his father's family, with due regard to their
various needs and abilities, he evidently intended to vest un-
usually broad and comprehensive powers in his trustees and
their successors.

Eliminating from consideration, for the moment, the pro-
visions of item 15, and viewing items 8 to 14, inclusive, as if
they stood alone in the will, it seems that there could be little
doubt as to the testator's intent. The words "giving to each
such portion as my said trustees shall deem best," which are
so industriously and carefully used so many times, do not
mean "giving to each an equal portion," nor can they be made
to mean that by any rule of construction of which we are
aware. They are simple words of well-understood meaning,
and are neither technical nor occult. They can be made no
simpler or plainer by definition or construction. One might
as well attempt "to gild refined gold or paint the lily." Our
statute governing the construction of powers relating to real
property (sec. 2126, Stats. 1898) provides that "when the
terms of a power import that the estate or fund is to be dis-
tributed between the persons so designated in such manner or
proportions as the trustee of the power may think proper the
trustee may allot the whole to any one or more of such persons
in exclusion of the others." While it is probable that the
property disposed of under this will should be considered as
personal property, under the rule of equitable conversion, this

legislative construction of a similar power over real estate is certainly of significance.

But, of course, the natural and plain significance of words in one portion of a will may be changed and controlled by other provisions contained in the same will, if it appears from the whole will that such change or control was intended by the testator, and so we pass to the consideration of item 15 and other subsequent clauses. Before considering them, however, it is certainly significant to note that nowhere in items 8 to 14 is it expressly or impliedly indicated that the discretion to apportion, so plainly given by those items, is to be referred to or governed by the provisions of item 15. That item will be found at length in the statement of the case, and hence it will only be necessary here to state its substance, so far as material to this question. It provides in effect that if any beneficiary shall, in the opinion of the trustees, not be of good habits, or of sufficient capacity to properly use and care for the property coming to him, or not likely to so use it, then the trustees are empowered to withhold from him his portion of the estate or income, and pay him only such portion as to the trustees seems advisable, or themselves expend it for the beneficiary's benefit, provided that if the beneficiary becomes worthy, in the opinion of the trustees, then the fact of his previous unworthiness shall not prevent his sharing in subsequent distributions of principal or income. The item further provides that its provisions are to govern in all cases; that all the provisions of the will, including items 8 to 14, are to be subject to the changes authorized to be made by the trustees under this item on account of unworthiness, lack of capacity, or good habits, but that except as provided in this item in case of unworthiness or incapacity, and except as to the bequests under the ninth item, the trustees are desired, *in exercising the discretion given them by this will,* to make payment or transfers to a parent during his lifetime in preference to his issue (this not being mandatory, but merely expressed as a wish which

may aid the trustees in carrying out the discretion given them) ; that, in case of the death of any beneficiary before the time of his coming into enjoyment of his bequest, his lawful descendants shall take his share, subject to such changes as the trustees are authorized to make under *any provision* of the will.

The contention is that, taking item 15 in connection with items 8 to 14, inclusive, it is apparent that the testator intended his beneficiaries in the same class to share equally, unless the trustees should, for unworthiness or incapacity, withhold all or a part of the share of a beneficiary under item 15 ; in other words, that the only discretion to withhold or diminish a share is the discretion conferred by item 15. We have not been able to agree with this contention. Under this construction the words "giving to each such portion thereof as my executors shall deem best," so carefully repeated in items 8 to 14, become absolutely unnecessary and meaningless, because the discretion vested in the trustees by item 15 is expressly made applicable to all items of the will. But, aside from this, item 15 by its very terms recognizes another and different discretion from the discretion to withhold because of incapacity or unworthiness. It says that except in cases of unworthiness or incapacity, and except as to the bequests in the ninth item, the trustees are desired, in "exercising the discretion given to them by this will," to prefer living parents to their children. Here a discretion is spoken of and recognized by the testator himself, as given by the will, which is *not* the discretion conferred by item 15. To what does this language refer? Indeed, to what can it refer, except to the general discretion to apportion as the executors deem best given by items 8 to 14? We have searched in vain for any answer to this question. The preference of parents over children is not to be based on habits, unworthiness, or incapacity, but the testator desires his executors to make such a preference in exercising the discretion given them by the will.

Again, in the second codicil the testator suggests to his trustees that, in regard to the bequest to Susan W. Parker in the fourteenth item of the will, her age and infirmities be taken into consideration, and that the amount given her be no larger than reasonably necessary, in the opinion of the trustees, to afford her comfortable support for life, *"relying upon the discretion"* given to the trustees in said matter to do what they shall think best. The testator further suggests that, in fixing the amount to be paid to Sarah E. Matthews under the same item, an increased sum be given her on account of the greater number of her children in comparison to that of the other descendants of Sarah J. Parker, and again says that he relies upon the exercise of the discretion given to said trustees.

These various references to the discretion given to the trustees are entirely unexplainable upon any other basis than upon the basis that they possess a discretion entirely apart from the discretion to withhold upon the ground of unworthiness or incapacity under item 15. They refer to a general discretion; just such a discretion as results from the natural meaning of the words used in items 8 to 14. So referring them, they are harmonious and intelligible; otherwise they show lack of comprehension of the meaning of the will.

So we reach the conclusion that under items 8 to 14, inclusive, there was given to the executors and trustees a broad discretion to apportion the sums given to a class among its members entirely distinct from the discretion to withhold for unfitness or unworthiness under item 15, and that this discretion authorizes them to apportion equally or unequally, or to cut off one or more entirely and give the whole to the others. This is a very broad discretion and a very delicate one. It is not to be exercised arbitrarily, nor through whim or caprice, for this is not discretion. It must be a sound legal discretion, its conclusions must be based upon the application of the principles of right and justice to the facts, and the facts to be considered must be facts justly and legitimately bearing upon the

comparative claims of the parties for recognition as recipients of the testator's bounty. The testator has himself suggested that there should be a preference given to living parents over their children, and that age, infirmities, and number of dependents are also entitled to be considered. Probably there may be other facts entitled to be considered by the trustees, but it is dangerous to attempt to lay down rules in advance. It is enough to say that there must be real and substantial differences of situation germane to the subject and calling for difference in treatment in order to justify discrimination in amount. Among beneficiaries whose circumstances are substantially the same there can be no just discrimination, for discrimination in such a situation would be merely arbitrary and capricious.

The twenty-sixth item of the will directs that all notes and obligations held by the testator at his death, upon which any beneficiary, or the husband, wife, or issue of any beneficiary, should be indebted or liable to the testator, if not collected before the division of the estate into parts, should, for the purpose of such division, be appraised at the full amount of principal and interest unpaid and owing at the time of the death, including all obligations barred by the statute of limitations, and requests that the trustees, in making division of the estate into parts, assign said obligations to the parts or shares, respectively, of such beneficiaries, and provides that, in case the share of a beneficiary is less than the indebtedness so assignable to such share, the excess of indebtedness shall constitute a portion of the estate and be distributed among the remaining shares, as the executors shall deem best, "it being my intention hereby to provide more fully for the equitable division of my estate into eighty-one shares or parts, so that no one of my said relatives, or the husband or wife or issue of any such relative who shall be benefited by my said will, shall obtain an advantage over any other person by reason of any advancement or assistance I may have, before my death, ren-

dered to such relative or to the husband or wife or issue of the
·same, and which advancement or assistance shall be evidenced
by any such unpaid note, bond, contract, agreement, or obliga-
tion unpaid and held by me at the time of my death."

It appears by the complaint that William A. Dickson, who,
as one of the descendants of Marcia E. Dickson, is a bene-
ficiary under the thirteenth item of the will (together with
his children), was indebted to the deceased for borrowed
money in a large sum, represented by promissory notes, and
that Dickson obtained a discharge in bankruptcy January 8,
1900, prior to the death of the testator. The claim is now
made that by reason of this discharge the debt of Dickson has
been extinguished and cannot be considered as a debt or obli-
gation to be assigned to and charged up against him and his
children under the provisions of the twenty-sixth item. This
question was submitted to the court by the eleventh inter-
rogatory, and answered by the court to the contrary of said
contention, and we think rightly. The intention of the tes-
tator under this item is very plain. He wished any unpaid
loans or advancements made by him to any beneficiary to be
computed as a part of his bequest to such beneficiary, or the
husband, wife, or children of such beneficiary, whether out-
lawed or not. It is true that a discharge in bankruptcy not
only bars the remedy, but operates to extinguish the obliga-
tion, if· properly pleaded and proven; but it does not pay the
debt nor relieve the debtor from his moral obligation, nor does
it wholly extinguish the cause of action for all purposes. *Bank
of Commerce v. Elliott,* 109 Wis. 648, 85 N. W. 417.

By the last clause of item 26 the intent of the testator is
specifically declared to be to provide for an equitable distribu-
tion of his estate, so that no person shall obtain advantage of
another by reason of any such advancement or assistance evi-
denced by a note or obligation *unpaid* and held by the testator
at the time of his death. The debts of Dickson were unpaid,
and the testator held the obligations therefor at the time of

his death, so they come strictly within the words of the will.
It is probable that the same result would be arrived at had
there been no such clause. *In re Fussell's Estate* (Iowa) 105
N. W. 503.

By the answer to the twelfth question the court held that in
assigning these notes and obligations they should be appraised
at the full amount of the principal and interest unpaid there-
on at the time of the testator's death, and this holding was
plainly right under the terms of the will.

By the thirteenth question the court was asked whether the
trustees were authorized to withhold from William A. Dick-
son and his descendants so much of the income and principal
otherwise passing to them, from time to time, as would equal
the full amount of principal and interest unpaid from time to
time upon said Dickson's unpaid obligations held by the tes-
tator, and distribute the amount so withheld among the other
beneficiaries under said item 13, and the court answered that
they were so authorized in their discretion. This holding is
complained of, but we think without cause. If such were not
the holding, then manifestly the other descendants of Marcia
E. Dickson would suffer, and the descendants of William A.
Dickson would obtain an advantage over them in the distribu-
tion of the estate by reason of the indebtedness of their an-
cestor, a result which is contrary to the plainly expressed wish
of the testator. Substantially the same questions were pro-
pounded (except as to the effect of a discharge in bankruptcy)
as to the indebtedness of Charles G. Pratt and John M. W.
Pratt, descendants of Hannah A. Pratt, who as such descend-
ants were beneficiaries under the eleventh item of the will,
and were answered in the same way. For the reasons given
above these answers must also be held correct.

We now come to the question of the correctness of the al-
lowances to the various guardians *ad litem* payable out of the
estate at large, raised by the guardian of *Daniel Wells Norris*.
The argument in favor of these allowances is, in substance,

that the minors have been necessarily brought into court, not upon their own volition, but simply for the purpose of securing an authoritative and binding construction of the will for the benefit of the whole estate, and that the reasonable fees of their guardians, in performing their duty to their wards and to the court, are substantially a part of the necessary expenses of the administration of the estate. The case of *Ford v. Ford,* 88 Wis. 122, 59 N. W. 464, is relied upon to sustain the ruling of the trial court, and it is only fair to the trial court and to counsel to say that it does sustain the ruling. That case followed a series of cases brought for the construction of wills, and which are reviewed in the case of *In re Donges's Estate,* 103 Wis. 497, 79 N. W. 786, in which this court had, without serious examination of the question, directed that allowances be made by the county court out of the estate to the respective parties for counsel fees. In the *Donges Case* the question was brought sharply to the attention of the court, and it was held, after full consideration, that the habit of ordering the payment of counsel fees, other than the executor's, in such cases where the parties are *sui juris,* was without authority of law and should be stopped. Since the decision of that case this court has followed the rule there laid down, nor does the change in the law made by ch. 397, Laws of 1901, with reference to allowances for counsel fees in applications for probate of wills, affect actions for construction of wills. *Kronshage v. Varrell,* 127 Wis. 597, 107 N. W. 342. The *Donges Case,* however, was a case of actual adverse litigation by parties who were *sui juris,* and hence is not necessarily controlling upon the present situation, where minors have been brought into court by the executors simply as a necessary incident in the course of their effort to obtain direction as to their duties. The argument in favor of the allowance of reasonable pay for guardians *ad litem* in such a case, out of the body of the estate, especially where, as here, the interests of the minors are problematical and distant, is certainly quite

persuasive. However, the question does not seem to be an open one. In *Tyson v. Richardson,* 103 Wis. 397, 79 N. W. 439, which was originally an action to quiet title under a trust deed to which certain infants were necessary defendants (*Tyson v. Tyson,* 96 Wis. 59, 71 N. W. 94), it was distinctly held that, while an allowance should be made to the guardian *ad litem,* such allowance should be made payable only out of the infant's property under the control of the court, giving a lien thereon if necessary, following the rule laid down by New York authorities on that subject. *Union Ins. Co. v. Van Rensellaer,* 4 Paige, Ch. 85, and authorities cited at page 401 of 103 Wis. (79 N. W. 439). This rule having been definitely adopted, we do not deem it wise to change it. If hardship thereby results to a guardian who has acted under the order of the court, it must be accepted with the reflection that he has faithfully performed that which is in substance a public service, and has assisted the court in the administration of justice, as, by his high calling, he is at times bound to do, though there be no suitable financial return. We see no impropriety or error in remitting the question of the allowance to be made to the executors and trustees for services of their counsel to the county court, which has charge of the administration of the estate.

*By the Court.*—The judgment is modified by striking out the provision making the sums allowed to the guardians *ad litem* payable out of the trust estate at large, and inserting a provision that the sums allowed be paid out of and made a lien upon the respective interests in the estate to which said minors are entitled, and as so modified the judgment is affirmed, without costs to any party, except that the costs of printing of all the parties, and the fees of the clerk of this court, shall be taxed and paid out of the estate.

MARSHALL, J. (*dissenting in part*). I cannot agree that the secondary contingent beneficiaries under subdivisions 8 to

14 of the will were intended to have no rights except as they might be recognized as distributees of the testator's bounty upon the happening of conditions mentioned permitting them to be such. My brethren hold that the will gives them no rights except to insist upon an honest exercise by the trustees of a discretionary power in trust to award benefits upon the subject of the trust being freed from the rights of the primary takers. In my judgment they are given definite rights dependent, as to enjoyment, upon the subject of the trust being so freed, and subject to a discretionary power in trust to diminish or deny such right altogether for good cause, as indicated in the fifteenth subdivision of the will. On one theory the trust power is to be exercised to give, no right vesting until its exercise. On the other, the gift vested in right by the will, the trust power to be exercised only to pay or to withhold. In the latter, upon a primary beneficiary being satisfied, the secondary beneficiaries are to take definite shares absolutely, unless the trustees for good cause determine otherwise. In the former, in such event, the secondary beneficiaries must wait upon the decision of the trustees awarding to them such portions as they may see fit. That is the theory of the court. It will be seen that there is a radical difference between these two. The result of adopting the wrong one is to make an entirely different will for Daniel Wells than he ever dreamed of making: a very serious mistake in any case, and most emphatically such in case of a vast property and great number of interests, as in the instance before us.

The all-important rule for the construction of a will is that its meaning must be determined from the instrument itself, viewed in the light of the circumstances under which it was made. If thus viewed it means one thing, it cannot be properly construed to mean another because of any written or other law. A will may be defeated by the written law, but cannot be contradicted or varied thereby. The will in question, though it deals in fact with real estate as well as person-

alty, in legal effect deals only with the latter. It presents as clear a case of equitable conversion as can be found in the books. *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650, and many other cases in this court are conclusive on that point. Such being the case, no reason whatever is perceived for referring to any statute regarding the construction of wills relating to real estate. How does it read, having regard to the several interests; having settled that, we have settled all there is to be settled.

Another cardinal rule of construction is that, as between two meanings, either of which may be said to be expressed by the language used, the one should be regarded correct which under all the circumstances is the more reasonable. Now the most that can be said, it seems, in favor of the theory adopted by the court, is that it may reasonably be read out of the language of the will as well as the one for which I contend. Granted that is so, can there be any question but what the idea that Daniel Wells intended to dispose of all his property in definite shares to definite persons, with a power in trust to withhold as to any beneficiary found to be unworthy, is far more reasonable than the idea that he intended to turn his great property over to trustees to bestow, in a limited field, in their discretion? Can there be any doubt but what the idea that he intended to make a law, so to speak, and to create a power in trust to administer it, is more reasonable than the idea that he intended to create a power in trust to make the law of his estate and to administer it as well? It seems to me there can be but one answer, and that it is in the affirmative. Each of the items of the will, 8 to 14, and item 15, which bears on them all, are so long, so involved, and contain such useless repetitions and such a multiplication of words that one can best get sense out of them by first eliminating all except those which contain the real sense. I have endeavored to do that as to one taken as a type of 8 to 14, and as to item 15, transposed the declaratory purpose of the latter clause to its logical position, writing the two items in their proper relation,

making a paragraph as to each idea and numbering or lettering the same for convenience of reference.

(1) "I direct my said trustees to hold shares 65 to 68 both inclusive in trust during the two lives and nineteen years" aforesaid, "for the benefit of Hannah A. Pratt and her lawful descendants."

(2) "I direct said trustees during the continuance of the trust to pay, quarterly, the net income" of said shares "to said Hannah A. Pratt" while living, otherwise to said "descendants, giving to each such portion as said trustees shall deem best."

(3) "Upon the termination of this trust I direct said trustees to pay whatever remains of said shares to said Hannah A. Pratt, if living," otherwise to said "descendants, in such portions to each as said trustees shall deem best."

(4) "I authorize said trustees during this trust to pay said Hannah A. Pratt" while living, otherwise to said "descendants, such portions of the principal as said trustees shall deem best, giving to each such portion as said trustees shall deem best."

(5) Said trustees "are authorized" during "this trust to pay said Hannah A. Pratt" while living, otherwise to said "descendants, the principal, giving to each such portion as said trustees shall deem best," said "trust to thereupon terminate."

(6) To save all "difficulty in construing the" foregoing *"I expressly direct that the"* following *"provisions are to govern in all cases"* and all parts of the foregoing are *"to be expressly subject to such changes* as my said trustees are authorized to make *under such provisions."*

(a) "In case any person otherwise ENTITLED TO ANY PORTION OF" SAID SHARES "shall, in the opinion of said trustees, not be either of good habits or of sufficient capacity to properly use or to take care of the portion *so coming to him or her* or shall not be likely for any reason whatever, in the opinion of said trustees, to properly make use of" such "portion, I direct" them *"to withhold the same and to pay such person only so much"* thereof "OTHERWISE COMING TO SUCH PERSON as said trustees shall deem advisable," or "in case said trustees shall deem it best themselves to expend the same or any portion for his or her benefit, then I authorize" them "to do so."

(b) "Whatever of my estate *shall be withheld from any-*

*one*" for unworthiness "TO RECEIVE HIS OR HER PORTION and shall not have been expended for the benefit of" him or her "*shall be transferred as in case the person from whom it shall be withheld had been dead at the time*" thereof.

(c) "In case any person from whom *any portion of my estate shall have been withheld* shall have become worthy in the opinion of my said trustees TO RECEIVE HIS OR HER PORTION, then I direct that the fact that said trustees *withheld from such person a portion of my estate* shall not, thereafter, prevent such person from receiving HIS OR HER SHARE in any" subsequent "distribution."

(d) "The fact that any person shall have become worthy" as aforesaid "shall not entitle such person to receive any portion of my estate that shall have been withheld."

(7) "Except as provided," in clauses (a), (b), (c), (d), aforesaid, "and the ninth item of this will, I desire my said trustees in exercising the discretion" as to "paying and transferring to the descendants of any person mentioned any portion of my estate, to make such payments and transfers to the parent during his lifetime," in preference "to his issue," provided, however, "if said trustees" shall deem it best to prefer in any particular case the child to the exclusion of his living ancestor, they may so do.

(8) "In case of the death of one who would if living *have been entitled to any portion of my estate,* except otherwise provided I will that the lawful descendants of such person *shall take such portion by right of representation* subject to the aforesaid provisions to change and modify."

(9) "In case of the death of any *one for whom provision is made* herein and of all his lawful descendants prior to the time of his or their" right to the enjoyment of the portion of my estate that he or they would have received if living, and it is not otherwise provided herein, then I will, etc.

It would seem that one might safely forego effort to analyze the essential language of the will thus stripped of its useless verbiage, in order to discover the real intent of the testator. Does it not speak, for itself, plainly the purpose of the testator to, himself, bestow his bounty upon definite persons in definite shares, each to take under the will subject to a discretionary power in trust to vary the amount of the bounty

according to circumstances, instead of a purpose to bestow the· great property on trustees to, themselves, in their discretion,. make gifts therefrom?

My brethren indulge in a very pretty figure at the point where it is said that to try to read out of the words, "giving to each such portion as my trustees shall deem best," any other than an absolute discretionary power to bestow benefits might well be likened to an attempt to "gild refined gold or paint the lily." With the greatest respect for my learned brothers, I venture to suggest that the rule was overlooked that the very plainest of language, when viewed by itself, may easily take on an ambiguous aspect when applied to the subject with which it deals or read with its context. "All is not gold that glitters." A thing is not a lily because it has the lily's form and color. Apparently refined gold, by the chemist's touch,. may be made to disclose the fact that it is the merest dross. And so the beauty of form and color of the lily may be the lily in fact to the eye, while other senses will disclose it to be· a delusion.

The words that seem to be so very plain are declared, as· will be seen, by the testator himself to be open to construction. He *ex industria* omitted to leave the labor in that regard to be performed by others. He did it himself. He said, *"In order that there may be no difficulty in construing this will, I hereby direct that the foregoing provisions of this fifteenth item* [see a, b, c, d] *are to govern in all cases, and that all other provisions of this will . . . are expressly subject to such changes and modifications as my said trustees are authorized to make by this fifteenth item."* That plainly covers every thing appertaining to the discretionary power. Every part of item 15 is, in the very plainest of words, made a proviso to those which my brethren lay so·great stress upon and seem only to view regardless thereof. To read items 8 to 14, omitting such proviso, may be likened to taking the glitter of fine gold as certainly indicating that which it suggests, omit-

ting the handy test which may readily disclose its true character.

So at every step in administering the discretionary power created in general terms, precedent to item 15, the trustees are commanded not to look at such general terms alone, but to regard them in the light of the real purpose declared in the later item *"in order that there may be no difficulty in construing"* the same.

There is a very significant feature in items 8 to 14 which it seems my brethren have wholly overlooked, and which of itself indicates, quite plainly, that the testator intended to *give,* not to empower the trustees to *give.* In every instance where he provided, in such item, for a distribution of the corpus of his estate, the words "give to each such portion, etc.," are preceded by the words "pay and transfer." Do they not, quite plainly, indicate an intention to create a legal right coupled with an equitable interest as to a definite share of the estate for each secondary beneficiary and to vest the same contingently in him? "Pay and transfer" suggests, at once, a legal title in one, a real beneficiary right in another, and an act in contemplation necessary merely to combine the two; the act of paying or transferring. The words following, "giving to each such portion, etc.," therefore do not suggest an original bestowal but do indicate a contemplated transmission by the trustees of something precedently given by the testator.

Now turning to the testamentary, constructional, and specific directory clauses, we find in almost every period the plainest of indications that the testator intended to make his trustees a mere conduit for the passage of his property in definite shares to definite persons, and that immediately upon the taking effect of the will, legal and equitable rights should vest in the beneficiaries, and the legal title, coupled with a discretionary power in trust, not of disposition but of distribution, should vest in the trustees. Note these plain expressions: *"In case any person otherwise entitled to any portion*

*of"* said shares; *"Take care of the portion so coming to him
or her;" "To receive his or her portion;" "Shall not prevent
such person from receiving his or her share."* Thus a definite
portion was in contemplation as carved out and given a spe-
cific direction to a particular person, in the testator's mind,
coupled with an absolute right to take and enjoy except as
otherwise provided. Now comes in the discretionary power
of the trustee, given in like unmistakable language, as note:
*"To withhold the same and pay only so much thereof;"
"Withheld from any person for unworthiness;" "Any portion
shall have been withheld."* Do not "withhold" and "with-
held" plainly suggest the existence of an absolute right to
take a definite thing, unless withheld; that the power is to be
exercised upon a thing in transit to stay its course toward a
particular destination, not upon a thing to give it motion in
that regard? Again, do not the words "pay only" indicate an
obligation rather than a beneficence; that the mere element of
beneficence was complete and fixed when the will took effect,
giving rise to an obligation resting upon those upon whom the
legal title devolved to pay, in discharge of an obligation, un-
less excused for cause, under the power in that regard? The
trustees could not *withhold* anything unless the thing *with-
held* would otherwise go in a particular direction, to a par-
ticular person, in discharge of a particular obligation created
by a transfer to trustees for specific uses and an acceptance
of the trust. They could not pay anything to anyone unless
there was a person holding an obligation, waiting to be dis-
charged by such payment.

Look at period (c). The share of each person is there
treated as a definite thing to be considered by itself at each
distribution, entitling the one holding the vested contingent
right thereto to a ratable part of that portion of the whole es-
tate distributed, such part to be charged to such share unless
withheld, in which case the ratable portion to be charged to
such share just the same, but deemed to be absolutely for-

feited as to the holder of the contingent right and to be a sub-
ject for distribution under other clauses of the will, the bal-
ance of such share, however, to be regarded as such person's
property in all future distributions, subject to the further ex-
ercise of the discretionary power to withhold and divert. How
could that be possible other than under the construction of
the will for which I contend? How could one forfeit a thing
which he never possessed a vested right to, contingent or
otherwise?

Now look at paragraph (8). There the share carved out
for a person, who may predecease its distribution, is still to be
regarded as having been his in right, and to go accordingly,
to his descendants by right of representation. That is only
consistent with the existence of a vested right in such person,
springing from the act of the testator and the allowance of his
will. It is wholly inconsistent, it seems, with the idea of a
mere privilege to take the crumbs that may perchance fall
from the table of the trustees.

At last, in paragraph (9), we find the idea still strikingly
prominent, that a definite part of the testator's property was
willed to each of those whom he remembered, with a right
vested accordingly, subject to variance for cause—in that the
part designed for one, in case of his demise and that of all of
his descendants as well before arrival of the time for the trus-
tees to discharge the contingent obligation "to pay," is to go
over in a specific manner, to specified persons.

Thus every major and minor part of the estate the testator
intended should be vested in right, by force of the will itself,
subject to disturbance for cause as to anyone appearing in the
judgment of the trustees unworthy to enjoy the "portion so
coming to him or her."

Does it not seem plain that the words "giving to each such
portion as said trustees shall deem best" were written with
reference to the words preceding, *"pay and transfer,"* and
with strict regard to the directions to treat the estate as di-
vided into as many major and minor shares as there were per-

sons intended to be remembered, and in discharging the obligation to pay each his part, to consider his habits, his capacity, and everything whatsoever affecting his worthiness to enjoy the benefaction held contingently in trust for him and to diminish the same, or withhold it altogether according to the result. That makes a reasonable disposition of the great property which Daniel Wells possessed, while the other theory convicts the distinguished business man of having made such a disposition of his great estate as no one in his right mind and in the strength of his manhood would be expected to make.

Much stress is put on the fact that the words "give to each such portion, etc.," were repeated many times in items 8 to 14 of the will, without any reference therein or in close connection therewith, to item 15. We cannot appreciate that. What difference, pray, does it make, as regards the effect of item 15 upon the precedent items, whether the latter is referred to in the former, or the former in the latter, if in fact, as we find it to be, every part of the will is expressly made subject to item 15, required to be read therewith and to be construed and governed thereby?

We are told that item 15 itself recognizes a discretion different from that to withhold because of unworthiness to take, in that it says, excepting "in case of unworthiness or incapacity, and except as to bequests in the ninth item, the trustees are directed, 'in exercising the discretion given to them by this will,' to prefer living parents to their children. Here a discretion is spoken of and recognized by the testator which is distinct from the discretion conferred by item 15." We confess inability to appreciate that. All parts of item 15 expressly refer to and govern, as before indicated, items 8 to 14, inclusive. Those portions of 15 which we have designated as (a), (b), (c), (d) relate to variances, of the otherwise certain rights, in case of unworthiness. Period 8, to which the court refers, relates solely to that part of the precedent clauses, 8 to 14, relating to payment and transfer of portions of the corpus of the estate. In those cases the trustees are

given authority, for good cause, in their judgment, to prefer a descendant in the second to a descendant in the first degree. That, as well as all other parts of item 15, are in harmony with the idea that each beneficiary is to take under the will without any act of the trustees, except that of mere payors or transferrers, unless for cause they conclude to diminish or deny the right, which they are given full power to do acting judiciously.

In closing we must again refer to the plain declaration of the testator that the words, "giving to each such portion as my trustees may deem best," are not to be taken literally, but are to be taken according to the testator's construction thereof, and directions in regard thereto. Facing that, we are able to reach—we are forced to—a different conclusion than the one arrived at by the court—without attempting the impossible feat suggested in the court's opinion—because the testator in plain language, "in order that there might be no difficulty in construing" his will, *ex industria* construed it himself, for all whom it might concern.

Except as to the one feature we have discussed we fully concur in the decision of the court. As to that feature it is hoped that we have made our dissent as emphatic as practicable.

Motions for a rehearing and for amendment of the mandate were made, and on May 8, 1906, the following opinion was filed:

WINSLOW, J. In the opinion of the court the following language is used: "While it is probable that the property disposed of under this will should be considered as personal property under the rule of equitable conversion," etc. The plaintiffs, on motion for rehearing, call attention to the fact that the question of equitable conversion was not raised or argued in the case, and hence should not be decided. Their contention in this behalf is well founded. The words above

quoted were inadvertently used. The idea intended was that, "even if the property·disposed of should be considered as personal property under the rule. of equitable conversion," etc., and the opinion should be read as if these last-named words were used. The question of equitable conversion was not decided, nor was any intimation of opinion upon that question intended.

Motions for rehearing and for amendment of the mandate are made by several of the guardians *ad litem* so as to provide for the allowance to them of costs or compensation for ·their services in this court, or both. Upon consideration of these motions we are satisfied that allowances for services upon the appeals should be made to the guardians who appeared in this court, payable from and made a lien upon the interests of their respective wards. The mandate will therefore be amended so as to provide for such compensation, and in other respects the various motions are denied, without costs.

*By the Court.*—The mandate is amended so as to read as follows: The judgment is modified by striking out the provision making the sums allowed to the guardians *ad litem* payable out of the trust estate at large, and inserting a provision that the sums allowed be paid out of and made a lien upon the respective interests in the estate to which said minors are entitled, and as so modified the judgment is affirmed, without costs to any party, except that the costs of printing of all parties and the fees of the clerk of this court shall be taxed and paid out of the estate; and it is further adjudged that an additional allowance of $200 be .and is hereby made to each guardian *ad litem* as compensation for his services in this court, to be paid out of and made a lien upon the interest of his respective ward or wards.

On June 21, 1906, a further motion to amend the mandate was granted to the extent of allowing Glenway Maxon $500 instead of the amount stated in the mandate, and $200 additional to each of the other guardians *ad litem*.